UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
GRAIN D'OR LLC,                                                   :
                                                                  :
                        Plaintiff,                                :
                                                                  :
            -v-                                                   :
                                                                  :
INBAR WIZMAN,                                                     :
                                                                  :
                        Defendant.                                :
                                                                  :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/22/2023

21-cv-10652 (LJL)

MEMORANDUM &
ORDER

LEWIS J. LIMAN, United States District Judge:

Defendant Inbar Wizman ("Defendant" or "Wizman") moves, pursuant to Federal Rule of Civil Procedure 37(d)(1), to compel Plaintiff Grain D'OR LLC ("Plaintiff") to produce for deposition Eudes De Crecy ("De Crecy") and to produce the address of Herbert Koch ("Koch") so that Defendant can issue a subpoena for his deposition. Dkt. No. 24.

## BACKGROUND

Defendant is an Israeli musician and performing and recording artist currently living in London, England. Dkt. No. 1 ("Complaint") ¶¶ 2, 5–6. Plaintiff is a Florida limited liability company, which manages the careers of professional musicians. *Id.* ¶¶ 1, 7. Defendant is the signatory on three agreements with Plaintiff—the Exclusive Management Agreement, the Recording Agreement (collectively, the "Management and Recording Agreements"), and the 360 Exclusive Entertainment Agreement (the "360 Agreement", and, together with the Management and Recording Agreements, the "Agreements"). *Id.* at 1; *id.* ¶¶ 7, 25.

Under the Agreements, Plaintiff agreed to manage Defendant's professional career, to use its best efforts to allocate resources to promote her career for a term that was ultimately extended to October 31, 2020, and to pay Defendant a specified flat amount for the exclusive rights to all

of Defendant's musical compositions. *Id.* ¶¶ 7–10, 22, 26–27. In exchange, Defendant agreed to assign all copyright royalties and rights in her musical works to Plaintiff, to sign payment instructions and other documents to qualify Plaintiff as the beneficial owner of all copyright and royalty payments, and to pay Plaintiff twenty percent of her gross earnings. *Id.* ¶¶ 13–15, 20. "Gross earnings" was ultimately defined by the 360 Agreement to mean all earnings after the deduction of artist development expenses. *Id.* ¶ 28. Plaintiff alleges that it performed its obligations under the Agreements, including by advancing funds for musical and video production, equipment, and instruments and by paying Defendant's rent, utilities, and other expenses related to her daily life, *id.* ¶¶ 31–32, but that Defendant breached her obligations, including by failing to execute a payment order for royalty payments owed to Plaintiff, *id.* ¶¶ 36, 46, 48. Plaintiff also alleges that Defendant failed to return or disclose the location of company-owned items (including a piano, computer, and Bose sound system) that were advanced to Defendant. *Id.* ¶ 47.

In the Complaint, De Crecy is alternately alleged to have been an "executive" of Plaintiff, *id*. at 2, or its "majority shareholder," *id*.¶ 33. He plays a central role in the events at issue. Plaintiff alleges that, at the time of the Management and Recording Agreements and the 360 Agreement, De Crecy was in a personal relationship with Defendant. *Id.* at 2. However, their relationship "fizzled out." *Id.* The Complaint further alleges that shortly after early 2020 and after Defendant and De Crecy's personal relationship ended, De Crecy was removed as majority owner of Plaintiff. *Id.* ¶ 33. Plaintiff alleges that instead of satisfying her contractual obligations to it, Defendant "instead levied a baseless allegation of harassment and extortion, . . . alleging personal grievances about De[ ]Crecy," *id.* at 3, and asserted that "all payments made to her were part of her personal relationship with De[ ]Crecy," *id.* ¶ 45.

In November and December 2020, Plaintiff demanded that Defendant provide it royalty statements and execute the payment order. *Id.* ¶¶ 36, 40. Defendant responded that the parties would resume discussions in January 2021. *Id.* ¶ 41. On or about January 18, 2021, Plaintiff notified Defendant of numerous breaches of the Agreements and gave her thirty days to cure the default. *Id.* ¶¶ 43–44. Defendant responded with the assertion that the payments were made to her as part of her personal relationship with De Crecy and that Plaintiff was guilty of extortion. *Id.* ¶ 45. On or about February 22, 2021, Plaintiff sent Defendant a letter with the payment order to be executed and requesting the location of company-owned items advanced to Defendant. *Id.* ¶ 47. On or about July 30, 2021, Plaintiff sent Defendant an invitation to mediation to resolve the dispute between the parties. *Id.* ¶ 50. Defendant responded to the mediation invitation by alleging harassment and demanding that Plaintiff cease all contact. *Id.* ¶ 51.

Plaintiff claims it made an out-of-pocket investment in Defendant's career in an amount that exceeds $380,000. *Id.* ¶ 53. It seeks from Defendant the recovery of equipment, twenty percent of the gross receipts of her income, and execution of the payment order, and brings claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment and quantum meruit, as well as for an accounting, a declaratory judgment, and specific performance. *Id.* ¶¶ 52, 54–95.

For her part, Defendant asserts affirmative defenses that, *inter alia*, (1) the claims are barred by "fraud and misconduct, in that De Crecy induced Defendant to execute the Agreements by false representation of his capabilities to manage Defendant's musical career, that he is a Music Producer, label Company and a Record Company, so he can gain financial and intimate control over Defendant" and that "De Crecy promised Wizman that he would marry her and that he will divorce his wife, a promise that he never fulfilled with an excuse that he cannot divorce

his wife because she has ties to his businesses and that his US Green Card is contingent to her US Citizenship," Dkt. No. 13 ¶ 15, and (2) the "Agreements are . . . illegal in that they have been offered by De Crecy so he can declare the monies spent on Defendant as part of their intimate relationship as business expenses," *id.* ¶ 19.  Defendant also asserts a counterclaim in which she alleges that Plaintiff is an agent of De Crecy and that she was fraudulently induced to enter into the Agreements based on De Crecy's false representations about his capabilities and his false promise that he would divorce his wife and marry Defendant.  *Id.* ¶¶ 25, 28–29.

## PROCEDURAL HISTORY

Plaintiff initiated this case by complaint filed on December 23, 2021.  Dkt. No. 1.  Defendant answered on June 27, 2022.  Dkt. No. 13.[1]  Defendant filed this motion to compel the deposition of De Crecy on January 13, 2023.  Dkt. No. 24.  Plaintiff filed a letter brief in opposition to the motion on January 17, 2023, Dkt. No. 26, and Defendant filed a reply letter on January 19, 2023, Dkt. No. 27.  The Court held a telephone conference on January 27, 2023, during which it ordered Plaintiff to turn over certain documents relevant to its defense to the pending motion and ordered the parties were to submit supplemental letter briefing by February 17, 2023, addressed to the management of Plaintiff and other matters relevant to De Crecy's deposition.  Dkt. No. 33.  Each side submitted supplemental letter briefs on February 17, 2023.  Dkt. Nos. 35–36.

## DISCUSSION

Defendant argues that De Crecy is a "managing agent" subject to deposition by notice.  *See* Dkt. No. 24 at 1.  Plaintiff responds that, while De Crecy may once have been subject to deposition by notice, he is no longer affiliated with Defendant and thus may not be noticed for

---

[1] The Court extended the time for Plaintiff to serve the Complaint based on the representation that Defendant was a foreign national residing in London, United Kingdom.  Dkt. No. 9.

4

deposition. *See* Dkt. No. 26 at 2; Dkt. No. 36 at 3. It argues by implication that Defendant must locate De Crecy and then serve a Rule 45 subpoena on him. Defendant has the better of the arguments.

I.      **Relevant Legal Standards**

Federal Rule of Civil Procedure 37(d)(1) provides that "[t]he court where the action is pending may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1). "A corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice." *Dubai Islamic Bank v. Citibank, N.A.*, 2002 WL 1159699, at *2 (S.D.N.Y. May 31, 2002).

Although the test is "not formulaic," *id.* (quoting *Boss Mfg. Co. v. Hugo Boss AG*, 1999 WL 20828, at *3 (S.D.N.Y. Jan 13, 1999)),

> courts in this district have generally considered five factors in determining whether an individual is a managing agent: "1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation."

*Id.* at *3 (quoting *Sugarhill Records Ltd. v. Motown Record Corp.*, 105 F.R.D. 166, 170 (S.D.N.Y. 1985)). The test of whether an individual is a "managing agent" is functional rather than formal. *See Dubai Islamic Bank*, 2002 WL 1159699, at *2 ("[T]he question of whether a person is a managing agent, and therefore subject to a notice of deposition, is answered pragmatically and on a fact-specific basis."); *Boss Mfg.*, 1999 WL 20828, at *3 ("The test for a

5

managing agent is not formulaic."). Thus, a proposed deponent need not carry the title "managing agent" to be considered a managing agent under the Federal Rules of Civil Procedure. It is sufficient that the deponent be, in some respects, an agent of the corporate defendant and have some actual or potential managerial authority. *See Schindler Elevator Corp. v. Otis Elevator Co.*, 2007 WL 1771509, at *3 (S.D.N.Y. June 18, 2007) (holding that independent contractors can be managing agents and that the focus of analysis is on the agency relationship, the scope of the agent's authority, and the nature of his role in the matters at stake in the litigation); *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96 (S.D.N.Y.1968) ("The term 'managing agent' should not be given too literal an interpretation.").

By the same token, a former officer or agent can be a "managing agent" for purposes of Rule 37(d)(1). *See Dubai Islamic Bank*, 2002 WL 1159699, at *3 (collecting cases for the proposition that "[a]lthough typically a corporation cannot be required to produce a former officer or agent for deposition, this rule is not woodenly applied" (internal citations omitted)); *United States v. Afram Lines (USA) Ltd.*, 159 F.R.D. 408, 414 (S.D.N.Y. 1994); *see also Maag Audio, LLC v. Earbyte, Inc.*, 2020 WL 12707953, at *4 (E.D. Mich. 2020) ("[T]he deponent need not have a formal association with the corporation to be deemed its managing agent and need not be associated with the corporation at the time of his deposition." (internal quotation marks and citation omitted)). Thus, an officer, director, or managing agent cannot evade deposition by notice through the artifice of formally resigning an office. "Courts have accorded managing agent status to individuals who no longer exercised authority over the actions in question (and even to individual who no longer held any position of authority in the corporation), so long as those individuals retained some role in the corporation or at least maintained interests consonant with rather than adverse to its interests." *Founding Church of Scientology of Washington, D.C.,*

*Inc. v. Webster*, 802 F.2d 1448, 1456 (D.C. Cir. 1986) (collecting cases); *see Afram Lines*, 159 F.R.D. at 414.  The purpose of testing the status of an individual at the time of deposition is, in part, "to protect the party from the admissions of disgruntled former officers or agents."  Charles Alan Wright & Arthur R. Miller, 8A Fed. Prac. & Proc. Civ. § 2103 (3d ed. ) (citing *Independent Productions Corp. v. Loew's, Inc.*, 24 F.R.D. 19 (S.D.N.Y. 1959); *Curry v. States Marine of Del*, 16 F.R.D. 376 (S.D.N.Y. 1954)).  However, when an individual's interests continue to align with those of the corporation, courts have found that the individual's deposition can still be considered the deposition of the corporation.  *Id.*  In addition, "[c]ourts have recognized an exception to the managing agent rule when 'a corporation terminates an officer in light of pending litigation.'"  *In re Terrorist Attacks on September 11, 2001*, 2020 WL 8611024, at *5 (S.D.N.Y. Aug. 27, 2020) (quoting *Rundquist v. Vapiano SE*, 277 F.R.D. 205, 208 (D.D.C. 2011)).  In that instance, the court looks to the proposed deponent's status "as of the time when the activities disputed in the litigation occurred, not at the time of the deposition."  *Id.*; *see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 268 F.R.D. 45, 50–51 (E.D. Va. 2010) (rejecting argument that defendant's removal of proposed deponents negates their status as a matter of law because "[t]he timing and circumstances of [defendant's] . . . termination of its employees renders the status of the proposed deponents highly suspect").  "The reason for [this] exception[] is obvious: without [it], an organization could manipulate discovery and frustrate the purpose of the rule simply by moving its managers around whenever it wished to prevent them from being deposed."  *E.I. DuPont de Nemours & Co.*, 268 F.R.D. at 49.

The burden is on the examining party to establish the status of the witness, *Sugarhill Records*, 105 F.R.D. at 170, but this burden has been described as "modest," *Dubai Islamic Bank*, 2002 WL 1159699, at *4 (quoting *Boss Mfg.*, 1999 WL 20828, at *4):  To take a

7

deposition by notice, the examining party need only present "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." *Id.* (quoting *United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)); *see also Stanley Works Israel Ltd. v. 500 Group, Inc.*, 2019 WL 5485266, at *2 (D. Conn. Oct. 25, 2019) (same); *Cambridge Cap. LLC v. Ruby Has LLC*, 2022 WL 889143, at *1 (S.D.N.Y. Mar. 24, 2022) (same).

## II. Application

Defendant does not claim that De Crecy is an "officer" or "director" of Plaintiff. For the proposition that De Crecy should be considered a "managing agent," Defendant initially pointed to three pieces of evidence. First, the Complaint alleges that De Crecy was the majority shareholder of Plaintiff and Plaintiff admitted at a pretrial conference that De Crecy owns 33% of the equity of Plaintiff. Dkt. No. 24 at 1–2. Second, Plaintiff's limited liability company agreement, dated November 18, 2016 (the "Operating Agreement"), gives authority over Plaintiff's management to the Board of Managers, provides that there is only one Manager constituting the Board of Managers, is signed by De Crecy as "Manager, on behalf of the Board of Managers," and reflects that an entity named Table Rock IP, LLC ("Table Rock") had a 100% ownership interest in Plaintiff. Dkt. No. 24-2 §§ 5.1, 5.2; *id.* pp. 8–9.[2] Third, Amendment No. 1 to Plaintiff's Operating Agreement, dated May 3, 2021 (the "Amendment"), is signed by Table Rock, as "Founding Member," through De Crecy as "Manager," and gives the Founding Member the right to approve capital contributions made to Plaintiff, the issuance of additional limited

---

[2] The Operating Agreement provides that the "Board of Managers shall have full and complete authority, power and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters and to perform any and all other acts or activities customary or incident to the management of the Company's business and objectives." Dkt. No. 24-2 § 5.1. It further provides: Manager "shall hold office until a successor shall have been elected in accordance with this Agreement and duly qualified." *Id.* § 5.2.

8

liability company units, and the admission of additional members of the company  Dkt. No. 24-3 § 3; *id.* at 4.

Plaintiff responded with the Declaration of Ziad Ghanimi ("Ghanimi").  Dkt. No. 26-1.  Ghanimi claims to have become the manager of Plaintiff in or about July 2021, and states that since that time De Crecy has not been an employee, officer, director, or managing agent of Plaintiff and that Plaintiff has been operating without input from Table Rock.  *Id.* ¶ 3.  He also states that "Plaintiff's records indicate that De Crecy resigned from all of his functions with [Plaintiff] on October 18, 2020," *id.* ¶ 5, and that since Ghanimi became manager, "De Crecy has had no involvement with [Plaintiff's] business at all," *id.* ¶ 7.  Ghanimi attaches a letter addressed to Defendant, care of a London law firm and dated September 8, 2021, informing Defendant of a change of management that purportedly occurred in July 2021, and inviting Defendant and her legal counsel to discuss with Plaintiff her "contractual position and working together going forward."  Dkt. No. 26-2.  Ghanimi also attaches a letter purportedly signed by De Crecy and dated October 18, 2020, indicating he resigned all his positions with Plaintiff "this day October 18th 2020."  Dkt. No. 26-3.

Each party has submitted additional documents with respect to the motion.  Plaintiff has submitted a supplemental declaration of Ghanimi in which he states (among other things) that he was designated by Table Rock to be the manager of Plaintiff on July 30, 2021 and since that date has been the only manager on Plaintiff's board of managers.  Dkt. No. 36-1 ¶¶ 4–5.  Ghanimi further declares that Plaintiff has no business operations other than this lawsuit, *id.* ¶ 7, and that following his designation as Manager, it was his job first to try to "repair the professional relationship" with Defendant, then "to try to have Defendant agree to mediation in order to resolve any disputes and move forward under the contracts Defendant entered into with

9

Plaintiff," and then, when the efforts to mediate failed, "to move forward with engaging counsel to file a lawsuit against Defendant to enforce her agreements with Plaintiff and to manage this lawsuit," *id.* ¶¶ 8–10.  Ghanimi asserts that De Crecy was not consulted on and had no input with respect to the decision to file this lawsuit and that Plaintiff has no ability to compel De Crecy to appear for a deposition.  *Id.* ¶¶ 11–12.  He points to a Letter filed with the Florida Division of Corporations formally replacing De Crecy with Ghanimi on September 22, 2021.  Dkt. No. 36-3.

Ghanimi does not answer the question of who appointed him to be a manager if—as he asserts—De Crecy resigned as Manager on October 18, 2020, the day after his romantic relationship with Defendant ended, Dkt. No. 36-1 ¶ 4, and if Table Rock was the sole member of Plaintiff and to this date maintains by far the largest interest in Plaintiff (40%), *id.* ¶ 3.  Nor does he address the discrepancy between the October 2020 date on which he claims De Crecy resigned and the September 2021 date reflected in the Florida records, on which De Crecy was formally removed.  Finally, he does not address how Plaintiff conducted business without a Manager between October 2020 and July or September 2021, including business related to this lawsuit.  *See* Dkt. No. 1 ¶¶ 36, 40, 43, 47.

Defendant points to other discrepancies and anomalies that call into question the veracity and reliability of the statement that De Crecy resigned in October 2020 and the assertion that he no longer has any authority with respect to Plaintiff.  *See* Dkt. No. 35 at 1–2.  First, De Crecy's purported October 18, 2020, letter is addressed to Plaintiff while the Operating Agreement permits a Manager to resign only by giving notice to the Member who, under the Operating Agreement, is Table Rock.  *Id.* (citing Operating Agreement § 2.9).  Second, Plaintiff produced a Written Consent of Table Rock dated as of July 30, 2021 (the "Written Consent"), signed by a Marc Penicaud as Secretary, representing that Table Rock was "the sole owner" of Plaintiff and

10

appointing Ghanimi as Manager of Plaintiff as of that date "to serve at the pleasure of" Table Rock. Dkt. No. 35 at 2. Third, Defendant offers reason to question both whether De Crecy ceased his involvement with Table Rock and whether the purported transfer of an interest in Plaintiff to Ghanimi was a bona fide sale. In a letter dated May 5, 2021 to Ghanimi, De Crecy describes himself as the Manager of Table Rock and Table Rock as the Owner of Plaintiff and memorializes a purported sale of a five percent interest in Plaintiff for a purchase price of $4,000 (to be paid within twenty-four months, during which period Ghanimi enjoys an interest-free loan) and subject to (1) the agreement that the units will be automatically returned to Table Rock if the units are not fully paid by May 4, 2023, and (2) a side letter that gives Table Rock the right to buy back Ghanimi's interest at any time for a buy-out fee calculated at an uncompounded rate of five percent per year. Dkt. No. 35-7. The agreements with the two other purported investors—signed by De Crecy as Manager of Table Rock on May 5, 2021—also contain the interest-free-loan and the automatic-restitution provisions but do not contain a side letter with a call option for Table Rock. Dkt. Nos. 35-9, 35-10.[3]

      Defendant has presented "enough evidence to show that there is at least a close question whether [De Crecy] is the managing agent" within the meaning of the Federal Rules of Civil Procedure. *Dubai Islamic Bank*, 2002 WL 1159699, at *4 (citation omitted). There is evidence that De Crecy is invested with general powers allowing him to exercise judgment and discretion in the corporate matters of Plaintiff. The record supports that De Crecy was the Manager of Plaintiff until at least July or September 2021, *see* Dkt. No. 35-4 (appointment of Ghanimi as

---

[3] There is also a letter dated August 5, 2021, purportedly signed by Penicaud as Secretary of Table Rock, superseding the May 5, 2021 letter, and giving Ghanimi an additional ten-percent interest in Plaintiff in purported settlement of litigation between Ghanimi and De Crecy. Dkt. No. 35-11.

Manager by Table Rock in July 2021); Dkt. No. 36-3 (Florida filing removing De Crecy as Manager in September 2021), with the authority to manage the business and affairs of Plaintiff, *see* Dkt. No. 24-2 § 5.1. Although it appears that the nominal position of Manager transitioned to Ghanimi in July or September of 2021, there is reason to question both whether that transition was effective and whether it was meaningful. As Defendant points out, under the Operating Agreement, a Manager may resign only by giving written notice to the Member, which is defined as "Table Rock" in the Operating Agreement. *Id.* §§ 2.9, 5.3. De Crecy's purported resignation letter—which is ambiguous on its face—was delivered to Plaintiff and not to Table Rock. *See* Dkt. No. 26-3. No evidence has been proffered that De Crecy tendered an effective resignation letter. Moreover, even if the Written Consent were effective to replace De Crecy with Ghanimi as Manager of Plaintiff, that transition is not particularly meaningful. Although the Operating Agreement places the immediate power to manage the business and affairs of Plaintiff in the hands of the Board of Managers, which is comprised of one Manager, that Manager serves at the pleasure of and can be replaced by the Member. Dkt. No. 24-2 §§ 5.1, 5.2. 5.3. In the original Operating Agreement, the Member is defined as Table Rock. Dkt. No. 24-2 § 2.9. The Amendment gives Plaintiff the ability to admit additional members, but Table Rock is still defined as the Member. Dkt. No. 24-3. Further, the Written Consent, which postdates the admission of additional members, makes clear that Ghanimi is "to serve at the pleasure of" Table Rock. Dkt. No. 35-4. Indeed, Table Rock remains by far the largest single shareholder of Plaintiff. *See* Dkt. No. 36-1 ¶ 3. Further, although the units were purportedly transferred to the new members, there is reason to question whether these were true sales: each purchaser was extended an interest free loan with respect to the purchase and the units will automatically revert to Table Rock if the payment is not made by May 2023. *See* Dkt. Nos. 35-7, 35-9, 35-10, 35-11.

The purported purchasers took no downside risk in connection with the acquisition of their interests and paid no consideration in connection with any upside benefit. Plaintiff has presented no evidence that the payments for the units have been made and the transfers have become irrevocable. The evidence presented suggests that Table Rock is invested with general powers allowing it to exercise judgment and discretion over Plaintiff's corporate matters.

There also is evidence that De Crecy has the power to exercise judgment and discretion over Table Rock. On May 3, 2021, well after his purported resignation as Manager of Plaintiff, De Crecy signed the Amendment to the Operating Agreement as the Manager of Table Rock. Dkt. No. 24-3. In May 2021, he also signed the agreements purporting to sell portions of Table Rock's ownership interest in Plaintiff to Ghanimi among others. Dkt. Nos. 35-7, 35-9, 35-10. By July and August 2021, Penicaud signed documents on behalf of Table Rock, but Penicaud signed as Secretary of Table Rock, *not* as Manager. *See* Dkt. Nos. 35-4, 35-11 at 2. There is no evidence that De Crecy was replaced as the Manager of Table Rock or that anyone else exercised managerial authority within Table Rock. Thus, De Crecy can continue to exercise control over Plaintiff through his position at Table Rock.

Additionally, there is no person in a position of higher authority than De Crecy with respect to this lawsuit. By his own admission, Ghanimi has no knowledge whatsoever with respect to this case; he was named Manager solely to manage litigation in which De Crecy is the party in interest. Dkt. No. 36-1 ¶¶ 9–11. Moreover, the underlying facts demonstrate that it is De Crecy who has effective control of the litigation. De Crecy has the facts upon which the litigation is based. He also has both a personal and the financial interest in the litigation. As the Manager of the entity with the largest stake in the litigation and the entity at whose pleasure Ghanimi serves, and as the only individual associated with Plaintiff with knowledge of the facts

13

regarding the litigation, he would have the practical ability to prevent the litigation from proceeding. The fact that Ghanimi has not spoken to De Crecy directly is itself insignificant and its veracity is dubious; Ghanimi asserts that he "cannot remember the last time that [he] spoke to De Crecy or what the substance of the conversation was." Dkt. No. 36-1 ¶ 11. But De Crecy is the signatory to the May 5, 2021 contract transferring a five-percent ownership interest in Plaintiff to Ghanimi. Even if the two have not spoken directly, there are other (and more expedient) ways for the purported manager of an entity whose sole asset is a lawsuit to speak with its star witness and seemingly largest shareholder, including in a privileged manner through counsel.

Furthermore, for the reasons already stated, De Crecy can be expected to identify with the interests of Plaintiff. In fact, their interests are perfectly aligned. They each have the identical interests in defeating Defendant's affirmative defenses and in showing that Defendant breached enforceable agreements. They each share an interest in the recovery in this case. It is not Ghanimi who holds the primary interest in this lawsuit; it is Table Rock and, the Court has therefore concluded, De Crecy himself. *See Founding Church of Scientology of Washington, D.C., Inc.*, 802 F.2d at 1456 ("Courts have accorded managing agent status to individuals who no longer exercised authority over the actions in question (and even to individuals who no longer held any position of authority in a corporation), so long as those individuals . . . at least maintained interests consonant with rather than adverse to [the corporation's] interests.").

Finally, there is evidence to support the conclusion that the purported removal of De Crecy was a sham, designed for no purpose other than to enhance Plaintiff's litigation position, improve its chance of recovery, and shield De Crecy from the discovery that would be necessary for Defendant to assert, must less to prove, her affirmative defense of fraud and misconduct.

Here, the timing is critical. By Plaintiff's own admission, by November and December 2020, Plaintiff was demanding that Defendant provide it royalty statements and execute the payment order. Dkt. No. 1 ¶¶ 36, 40. There is some reason to believe that even at that date, litigation was reasonably anticipated, and that it would have been logical for De Crecy to formally separate himself from Plaintiff, especially if he could maintain functional control over and his financial interest in that entity. By July 2021, Plaintiff invited Defendant to mediation to resolve their disputes, *id.* ¶ 50, and Defendant responded by alleging harassment and demanding Plaintiff cease all contact with her, *id.* ¶ 51. At that point, the importance of creating the appearance of a difference between Plaintiff and De Crecy would have been paramount. If control over the litigation was formally transferred to someone other than De Crecy, then Plaintiff would be able to assert its contract claim without exposing itself to any defense based on the conditions under which that contract was made. Thus, it hardly appears to be accident that it was in October 2020—on the eve of the demands for royalty statements and the execution of a payment order—that De Crecy conveniently "resigned," and that it was in July 2021, at the time that the dispute ripened to the point where Plaintiff would have to resort to dispute resolution, that De Crecy was "replaced," by Written Consent of Table Rock, with Ghanimi. Dkt. No. 36-1 ¶ 4. There was no business rationale for these decisions: Plaintiff has no business and the sole role of the "Manager" was ostensibly to hire a lawyer and to manage the litigation. *See id.* ¶ 7. These managerial changes "are sufficiently suspect to warrant a deviation from the general rule that the deponent should be [considered] a managing agent [only by looking to] the time of the deposition."[4] *E.I. DuPont de Nemours & Co.*, 268 F.R.D. at 51; *see also In re Terrorist Attacks*

---

[4] Although Plaintiff claims that it has no power to compel De Crecy's attendance at a deposition, Dkt. No. 26 at 2, Defendant need not show that Plaintiff has the power of compulsion over De Crecy to show that he is a managing agent. As noted, Table Rock remains the largest single

15

*on Sept. 11, 2001*, 2020 WL 8611024, at *5 (holding that when a personal change "may have related in part to the pending litigation," a court should "determine [the deponent's] status as a 'managing agent' as of the time when the activities disputed in the litigation occurred, not at the time of the deposition.").[5]

### III. <u>Koch</u>

Defendant also seeks Koch's address to serve him with a subpoena. Koch is not a managing agent of Plaintiff. Defendant alleges that Koch is De Crecy's brother-in-law and drafted the Agreements between the parties and that he allegedly conceded in a conversation

---

shareholder of Plaintiff, whose only asset and business is this lawsuit. Table Rock will thus be the largest single beneficiary if the lawsuit succeeds—it has the most to gain and the most to lose. And De Crecy is one of two critical witnesses in this case (the other is Defendant herself). There is little question of the practical ability of Plaintiff to compel De Crecy's attendance; De Crecy can be relied upon to give testimony, at Plaintiff's request, in response to the demands of the examining party. *See Schindler Elevator Corp.*, 2007 WL 1771509, at *5 ("[Deponent's] willingness [to be deposed] should be distinguished from the question of whether he would, if Plaintiffs were required to produce him, appear for a deposition. On that question . . . various aspects of [Deponent's] long-standing and ongoing relationship with Plaintiffs suggest that he would appear.").

[5] Plaintiff also moves for a protective order relieving it from the obligation of producing documents generated in connection with litigation that Ghanimi filed in 2014 and 2015 against Table Rock and De Crecy. Dkt. No. 31. The motion is moot. The Court ordered Plaintiff to produce all communications between Ghanimi and De Crecy in connection with Plaintiff's opposition to Defendant's motion to compel. *See* Dkt. No. 33 at 16. The motion has now been granted and thus Plaintiff is relieved from the effect of that order. Defendant has not served a document request with respect to these documents and therefore the Court has no occasion to determine whether the documents would fall within the broad scope of relevancy under Rule 26.

The Court notes that the allegations in the complaints submitted by Plaintiff further support the Court's conclusion on the motion to compel. Ghanimi alleged to a Florida court in 2014 that in 2011, De Crecy and a company formed by De Crecy sponsored Ghanimi as a non-immigrant worker on a H1-B visa, and that De Crecy thereafter recruited Ghanimi to work as a public relations manager for a salary of $50,000 a year. *See generally* Dkt No. 31-2. The Second lawsuit, filed against Table Rock and De Crecy as the "Managing Member and President of . . . Table Rock" and two other limited liability companies, filed in 2015, shows a series of financial relationships between De Crecy and Ghanimi. If Ghanimi was dependent upon De Crecy in the period from 2011 to 2014 and the two had financially intertwined interests during that period, it stands to reason that Ghanimi might still be dependent on De Crecy now.

16

with Defendant that Plaintiff "is not a real record company." Dkt. No. 24 at 1. He was listed as a witness on Plaintiff's initial disclosures. *Id.* at 1–2. Ghanimi asserts that "Koch is an attorney [who] is not employed by [Plaintiff]" and that Plaintiff "engaged Koch for distinct matters, including drafting some of the agreements identified in the Complaint." Dkt. No. 26-1 ¶ 6. There is no evidence to contradict that assertion.

While Defendant may not obtain Koch's testimony by notice of deposition, Defendant can obtain that testimony by Rule 45 subpoena. Defendant may serve a discovery request on Plaintiff for Koch's full address and may serve a subpoena on Koch. The Court will address any disputes over the privileged nature of Koch's testimony if and when they arise.

## CONCLUSION

The motion is GRANTED. Plaintiff is directed to produce De Crecy for deposition and to respond to a discovery request from Defendant for the full address of Koch.

The Clerk of Court is respectfully directed to close Dkt. Nos. 24, 31.

SO ORDERED.

Dated: February 22, 2023
      New York, New York

                                                 LEWIS J. LIMAN
                                          United States District Judge