UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRAIN D'OR LLC,<br>Plaintiff,<br><br>- against -<br><br><br>INBAR WIZMAN,<br><br>Defendant, | Case No. 21-cv-10652 (LJL)<br><br>**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED FACTS** |

Defendant Inbar Wizman ("Wizman" or "Defendant") hereby submits her objections to Plaintiff's statement of undisputed facts in support of its motion for summary judgment pursuant to Local Civ. Rule 56.1.

**A. Wizman's Contracts with Grain D'or**

1. Defendant Inbar Wizman ("Wizman") did not do any research on Grain D'or prior to signing the Management and Recording Contracts. Wizman Tr., 38:12-18.

**Undisputed**.

2. Wizman signed the Management and Recording Contracts with Grain D'or because Eudes De Crecy ("De Crecy") told her to sign them. Wizman Tr., 40:11-15.

**Undisputed**.

3. At the point in time that Wizman signed the November 1, 2017 Management and Recording Contracts with Grain D'or she had known De Crecy for approximately 6 months. Wizman Tr.,

14:11-13.

**Undisputed**.

4. Grain D'or paid Wizman monthly pursuant to the Recording Contract. Wizman Tr., 22:19-23:19.

**Disputed. No range of months is described.**

5. Grain D'or paid Wizman $173,400 between December 20, 2017 through September 23, 2020. Declaration of Marc Penicaud dated May 1, 2023 ("Penicaud Decl."), ¶ 12-13, Exh. 6.

**Disputed. Wizman is unable to confirm the amount paid and its source.**

6. Grain D'or paid Wizman $52,500 in Contract Year 1 (Nov. 1, 2017 – Nov. 1, 2018). Penicaud Decl., ¶ 14; Exh. 6.

**Disputed. Wizman is unable to confirm the amount paid and its source.**

8. Grain D'or paid Wizman $61,700 in Contract Year 3 (Nov. 1, 2019 – Nov. 1, 2020). Penicaud Decl., ¶ 14; Exh. 6.

**Disputed. Wizman is unable to confirm the amount paid and its source.**

9. Grain D'or paid Moran David $12,000 to provide singing lessons, and other artistic services, to Wizman. Penicaud Decl., ¶ 12, Exh. 5; Wizman Tr., 41:22-42:17.

**Disputed. Wizman is unable to confirm the amount paid and its source.**

10. Grain D'or paid over $67,203.55 in production fees to produce Wizman's recordings. Penicaud Decl., ¶ 10, Exh. 4. Wizman Tr., 43:10-20; De Crecy Tr., 21:22-23:10.

**Disputed. Wizman is unable to confirm the amount paid for the production fee. Plaintiff does not provide an invoice from the vendor and proof of payment made, such as a canceled check or bank transfer, other than Exhibit. 4, a self-made accounting made by**

**Plaintiff that defendant cannot confirm its truth, accuracy and connection to the alleged assertions. The reference made to Wizamn's Transcript (See, Wizman Tr., 43:10-20) is distorted. Wizman do not admit any amounts paid. Wizman confirm that she knows about one song that was paid for by Grain D'or. (See, Wizman Tr., 43: 8 – 22; De Crecy Tr., 21:22-23: 10.)**

11. Grain D'or paid Indleco Music $9,460 for advice on an artist concept to promote and develop Wizman as the artist known as "Lukah". Penicaud Decl., ¶ 9, Exh. 3;

**Disputed. Wizman is unable to confirm the amount paid and if it was paid, for the alleged advice by Indleco Music. Exhibit. 3 furnished by Plaintiff includes only one invoice in the amount of $2,960 from Indleco Music, followed by a transfer of payment ordered by Grain D'or. However, Concerning the remaining $6,500 of alleged payment to Indleco Music, plaintiff failed to furnish any invoice from it, evidencing the reason for the payment made and if at all it is connected to services provided to Grain D'or in connection to Wizman.**

12. Grain D'or paid over $12,019.52 in marketing expenses to promote Wizman's music. Penicaud Decl, ¶ 9, Exh. 3.

**Disputed. Wizman is unable to confirm the amount paid for marketing expenses. Plaintiff does not provide an invoice from the vendor and proof of payment made, such as a canceled check or bank transfer, other than Exhibit. 3, a self-made accounting made by Plaintiff that defendant cannot confirm its truth, accuracy, and connection to the alleged assertions.**

13. Grain D'or organized concerts for Wizman. De Crecy Tr., 41:17-42:02.

**Disputed. Grain D'or did not organize any concerts for Wizman. Plaintiff do not provide any evidence to support its assertion, other than De Crecy's transcript, which distort the truth.**

14. Grain D'or paid for English language classes for Wizman. Wizman Tr., 42:18-25.

**Undisputed**.

15. Grain D'or paid for a music video for Wizman's recording, "Scared Boy." Wizman Tr., 43:10-20.

**Undisputed**.

16. Grain D'or paid for speakers for Wizman. Wizman Tr., 45:2-4.

**Disputed. It is (Eudes) De Crecy who bought Wizman a speaker. (See, Wizman Tr., 45:2-4; De Crecy Tr., 38: 8-9).**

17. Grain D'or paid for studio time for Wizman, including recording engineers and technicians. Wizman Tr., 45:16-25.

**Disputed. The reference to Wizman's transcript is distorted and does not reflect the assertion suggested. Wizman does not confirm Grain's D'or paying for studio time, engineers, and technicians. Plaintiff's attorney confusing audio recording with video recording. (See, Wizman Tr., 45:16-25; 46: 1-25). Plaintiff did not provide any evidence proving vendor's invoice followed by a canceled check or bank transfer concerning the alleged assertion.**

18. Grain D'or paid for a piano for Wizman. Wizman Tr., 104:23 – 106:9; De Crecy Tr., 31:23-32:4.

**Disputed**. **The Piano was a gift from De Crecy. (See, Wizman Tr., 36: 6-24)**. **The reference to Wizman's transcript is distorted and does not reflect the assertion presented.**

19. Grain D'or paid for studio equipment including amplifiers, microphones, laptops, and musical equipment. Wizman Tr., 45:4-10; De Crecy Tr., 31:17-22, 35:18-23, 36:10-20.

**Disputed. The reference to Wizman's transcript is distorted. Wizman does not confirm the assertions stated. (See, Wizman Tr., 45:4-10)**. **Wizman only admits that Grain D'or paid for a microphone.**

20. Grain D'or paid for flights for Wizman to travel to her concerts. De Crecy Tr., 38:9-40:13.

**Disputed. De Crecy paid for flights for Wizmsn and himself to go on their vacations and trips as a couple. (See, De Crecy Tr., 36: 21-24; 37: 7-10, 20-24; 38: 2-15, 20-24; 39: 2-25). No Concerts were organized by Grain D'or. Grain D'or at best, "tried" to organize concerts. (See, De Crecy Tr., 38: 11-15).**

21. Grain D'or paid for a public relations agent for Wizman's music career. De Crecy Tr., 42:3-42:14.

**Undisputed.**

22. Grain D'or helped Wizman establish a presence on social media. De Crecy Tr., 42:3-42:14.

**Undisputed.**

23. Wizman was satisfied with Grain D'or from the time she signed the Exclusive Management Contract and Exclusive Recording Contract on November 1, 2017 until the time that she broke up with De Crecy in October 2020. Wizman Tr., 48:24-49:9.

**Disputed. The asserted statement is distorting Wizman's statement referred to.  Wizman said that she was dissatisfied with Grain D'or prior to her break up with De Crecy. (See,**

**Wizman Tr., 49: 10-19). For Wizman, Grain D'or is the agent of De Crecy. (See, Wizman Tr., 118: 17-23).**

24. Grain D'or notified Wizman of her breach of the Management Contract by e-mail dated November 18, 2020. Penicaud Decl.,¶ 17, Exh. 7; Wizman Tr., 71:3-72:23.

**Disputed. The email dated November 18, 2020, does not provide notice of breach, but merely notified Wizman that:** *"your collection situation in Israel is not compliant with your management agreement (Art. 4-d and Art. 12). In order to remedy this matter, please execute the attached order of payment and return to me an electronic copy at your earliest convenience"*. *"Please also provide me with a copy of the ACUM income statements you have received since the beginning of your Management contract, conveying your ACUM registration number"*. **(See Penicuad's email dated November 18, 2020).**

25. In the same e-mail dated November 18, 2020, Grain D'or requested that Wizman cure her default of the Management Contract by signing payment instructions in order for Grain D'or to receive copyright royalties directly from ACUM, the Israeli royalty collection society. Penicaud Decl., ¶ 17, Exh. 7; Wizman Tr., 71:3-72:23, Exh. 5 (P 00531-00533).

**Disputed. Same response as to assertion 24 above.**

26. Wizman did not have a specific reason for refusing Grain D'or's request to sign the document authorizing ACUM to pay the royalties directly to Grain D'or. Wizman Tr. 74:5-14.

**Disputed. The assertion suggested, distorts the statement Wizman made the transcript. Wizman stated that** *"there was no specific reason besides the fact that it was all tangled in the relationship"*. **(See, Wizman Tr., 74: 9-13; 78: 3-5; 79: 3-4, 17-23; 101: 21-23).**

27. In response to Grain D'or's notice of breach and demand that Wizman comply with the Management Contract by signing the payment instructions for Grain D'or to receive the ACUM royalties, Wizman notified Grain D'or attorneys by letter dated March 5, 2021 that she terminated the contracts, stating"[you] leave me no choice but to terminate the agreements." Penicaud Decl., ¶ 18, Exh. 8.

**Disputed. Same response as to assertion 24 above, except that Wizman terminated the agreements by email dated March 5, 2021. .2**

28. At the time that Wizman wrote the March 5, 2021 letter stating "[you] leave me no choice but to terminate the agreements," Wizman had no intention of creating any more recordings for Grain D'or. Wizman Tr., 91:4-7, Exh. 8.

**Undisputed**.

29. On March 13, 2021, Wizman instructed Grain's Do'r's Secretary, Marc Penicaud, "You have left me no choice but to ask you to never contact me again, about anything, personal or professional. . . This email is not open for conversation, any reply will be considered harassment." Penicaud Decl., ¶ 20, Exh. 9 (P 00567).

**Undisputed**.

 30. Grain D'or itself stopped performance of the Management and Recordings Contracts following Wizman's breach and filed suit. Penicaud Decl., ¶ 21

**Disputed. Wizman did not breached the contracts.**

31. Grain D'or did not receive any benefits pursuant to the Management and Recording Contracts following Wizman's breach. Penicaud Decl., ¶ 21

**Disputed.**

32. On May 8, 2021, Grain D'or's attorneys notified Wizman by letter that if she continued to refuse to sign the ACUM payment order, legal action would be taken. Penicaud Decl., ¶ 21, Exh. 10.

**Undisputed.**

33. Wizman refused and Grain D'or filed suit on December 13, 2021. Penicaud Decl., ¶ 21.

**Undisputed.**

34. Wizman was obligated to deliver to at least 8 recordings to Grain D'or during the Initial Term of the Exclusive Recording Contract. Exh. 2 at ¶ 5; Wizman Tr., 18:21-24.

**Disputed. It was Plaintiff who was obligated to produce the recordings. Wizman was obligated to perform, as a singer in them and she did.. (See, Exclusive Recording agreement, Par. 5**; See, Wizman Tr., 15: 11-15, 19-23; 16: 14-19).

35. Grain D'or received a total of 6 recordings from Wizman the titles of which are ((1) Roller Coaster; (2) Back of Your Car; (3) Scared Boy; (4) Fireworks; (5) Pain; and (6) Fucking Whore. Penicaud Decl., ¶ 15

**Disputed. Wizman testified that she performed as a singer in 8 recordings**. (See, Wizman Tr., 15: 11-15, 19-23; 16: 14-19).

36. Wizman testified that she delivered a total of 7 recordings to Grain D'or the titles of which are as follows: (1) Roller Coaster; (2) Back of Your Car; (3) Scared Boy; (4) Fireworks; (5) Cheap Foreign; (6) Pain; and (7) Fucking Whore. Wizman Tr., 15:8-16:24.

**Disputed. Wizman testified that she performed as a singer in 8 recordings**. (See, Wizman Tr., 15: 11-15, 19-23; 16: 14-19).

37. Wizman was required to deliver a total of 6 additional recordings to Grain D'or during the First Option Period of the Recording Contract. Exh. 2 at ¶ 5;

**Disputed. Wizman was required to perform, as a singer, in 6 recordings to be produced and delivered by Grain D'or. Grain D'or failed to organize the recordings (See, Exclusive Recording agreement, at Par. 5).**

38. The First Option Period of the Exclusive Management and Recording Contracts was automatically invoked unless Grain D'or sent a timely notice to the contrary. Stipulated Fact No. 1, Exh. 1, ¶ 1(a); Stipulated Fact No. 2, Exh. 2 at ¶ 4.

**Undisputed.**

39. The First Option Period of Management and Recording Contracts commenced on November 1, 2019 because Grain D'or did not send any notice to the contrary. Penicaud Decl., ¶ 16. Exh. 1, ¶ 1(a); Exh. 2 at ¶ 4.

**Undisputed.**

40. Wizman's allegations of sexual abuse are toward De Crecy, not Grain D'or. Wizman Tr., 121:3-6.

**Disputed. (See, Wizman Tr., 118: 8 - 25; 119: 2 - 5).**

Dated May 15, 2023
     brooklyn , NY

                                  ANGEL & NOAM LAW, PLLC

                                  By: _Noam Elia_
                                  Noam Elia
                                  100A Broadway, Ste. 495
                                  Brooklyn, NY 11249
                                  Tel. 347-307-3410
                                  *Attorneys for Defendant Inbar Wizman*